ROBERTS, J.,
for the Court.
SUMMARY OF THE CASE
¶ 1. This domestic relations case arose after Roy Edmond and Cassandra Townes had a child, Ryan Edmond. Roy filed a complaint in the Leflore County Chancery Court and requested a paternity test and, if the paternity test indicated that Roy was Ryan’s father, Roy requested custody of Ryan. If the chancery court did not grant Roy custody of Ryan, Roy requested visitation with Ryan. Cassandra filed a counterclaim and requested custody of Ryan and child support. After a hearing, the chancellor entered an order and found that, according to the paternity test, Roy was Ryan’s biological father. Having found such, the chancellor granted custody of Ryan to Cassandra and ordered Roy to pay Cassandra $402 per month in child support. Additionally, the chancellor ordered Roy and Cassandra to equally split any of Ryan’s medical expenses not covered by Medicaid. Unsatisfied, Roy filed what appears to be a motion for relief from judgment. In response, the chancellor issued an amended order and clarified Roy’s child support obligation. Otherwise, the chancellor did not disturb his initial order. Aggrieved, Roy appeals and raises two issues:
I. WHETHER THE CHANCELLOR ERRED WHEN HE TABULATED EDMOND’S CHILD SUPPORT OBLIGATION.
II. WHETHER THE CHANCELLOR ERRED WHEN HE ORDERED EDMOND TO PAY HALF OF ANY OF RYAN’S MEDICAL BILLS THAT MEDICAID WILL NOT COVER.
Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On April 28, 2003, Cassandra Townes had a son, Ryan Edmond. Cassan *101 dra was of the opinion that Roy Edmond was Ryan’s father.[1] On November 12, 2004, Roy filed a pro se petition in the Leflore County Chancery Court and requested joint legal custody of Ryan and physical custody of Ryan. In the event the chancellor awarded physical custody to Cassandra, Roy requested visitation rights with Ryan.[2] On December 6, 2004, Roy amended his petition and requested a paternity test. On December 14, 2004, the chancellor entered an order and found that Roy was entitled to a paternity test at his expense.
¶ 3. On January 6, 2005, Cassandra filed a “cross-complaint for child custody and child support.” By that document, Cassandra requested (a) full legal and physical custody of Ryan, (b) adequate visitation for Roy, so long as that visitation occurred near Cassandra’s home, and (c) child support. On January 19, 2005, the chancellor conducted a hearing on Roy’s initial and amended petitions and Cassandra’s cross-complaint. The record does not contain a transcript of that hearing. However, according to Cassandra’s brief, the chancellor:
inquired of the parties if a hearing was necessary and the parties informed the Court that an agreement had been reached between the parties and the same was outlined to the Court. The Court instructed that the agreement be reduced to a written judgment by Ms. Townes’ attorney and then submitted to the Court for entry after review by Mr. Edmond.
¶ 4. There is some dispute as to whether Roy and Cassandra’s attorney was able to reduce the agreement to writing. In her brief, Cassandra states:
Mr. Edmond would not respond to Ms. Townes’ attorney in several attempts to get the order entered with agreement set forth therein. The order was then submitted unto the Chancellor without any agreed or approved signature by the Plaintiff and the Court entered the Order on November 28, 2005, nunc pro tunc, January 19, 2005.
¶5. It seems that Roy disagrees with Cassandra’s recollection. In essence, Roy claims that the agreement he received from Cassandra’s attorney contained extraneous matters. Unfortunately, the record does not contain a transcript of the November 28, 2005 hearing that Cassandra references. However, the record does contain a copy of the chancellor’s January 19, 2005 order. By that order, the chancellor held:
2. That [Roy], pro-se, [sic] and [Cassandra], by and through counsel, Terry T. James, were all present at the hearing scheduled and held at the Leflore County Courthouse in Greenwood, Mississippi, on Wednesday, January 19, 2005 at 9:30 o’clock a.m.
3. That certain DNA testing was performed in this matter whereby [Roy] could not be ruled out as the natural biological father of [Ryan] and that [Roy] shall be responsible for all cost incurred as a result of said testing. That [Roy] is the natural biological father of the minor child ... and that [Cassandra] is the natural biological mother of said child.
[[Image here]]
4. That the mother, Cassandra V. Cassandra [sic], shall have the full legal and physical custody of said minor child....
[[Image here]]
*102 6. The court does hereby find that the minor child is presently receiving monthly benefits from [Roy’s] disability in the amount of $136.00 per month, said amount coming directly to [Cassandra] for the support and maintenance of the minor child of the parties. The court does hereby further find that [Roy] receives monthly benefits by and through the Department of Veterans Affairs ... and thereby does hereby order and direct that [Roy] pay unto [Cassandra] the sum of two-hundred sixty six dollars ($266.00) per month, said amount being in addition to the $136.00 per month said minor child presently is receiving from [Roy’s] disability.
7. That the minor child is presently covered by Medicaid thereby [Roy] and [Cassandra] are hereby ordered and directed to each pay one-half ... of any and all sums of medical and hospital expenses of the minor child of the parties not covered by medicaid.
Additionally, the chancellor ordered that Roy be allowed visitation with Ryan for four hours one weekend a month for three months. By the chancellor’s order, Roy, who lived in Arkansas, could only exercise that visitation within Leflore County. After three months of that visitation, the chancellor ordered that Roy be allowed to visit with Ryan for one weekend a month, without being limited to Leflore County.
¶ 6. Subsequently, Roy filed a document titled “Relief from Judgment, Decree or Order Motion to Amend Judgment.” Roy requested that the chancellor amend his judgment to reflect that Roy would be allowed to take Ryan to Arkansas for visitation. Roy also claimed that he was exempt from any child support obligation. Finally, Roy claimed that the chancellor should amend the insurance portion of his judgment to allow CHAMPVA insurance to cover any medical bills that Medicaid would not cover. The chancellor entered an amended order and clarified that Roy’s monthly $402 child support obligation would be paid as follows: $136 per month from the Social Security Administration, $50 per month from the Department of Veterans Affairs, and $216 per month from Roy.
STANDARD OF REVIEW
¶ 7. As we review this appeal, we are mindful that chancellors are vested with broad discretion. Jacobs v. Jacobs, 918 So.2d 795(¶ 5) (Miss.Ct.App.2005). This Court will not disturb the chancellor’s findings unless the chancellor was manifestly wrong, abused his discretion, or applied an erroneous legal standard. Id.
ANALYSIS
I. WHETHER THE CHANCELLOR ERRED WHEN HE TABULATED EDMOND’S CHILD SUPPORT OBLIGATION.
¶ 8. Roy’s brief is inartfully drafted. Though his argument is difficult to discern, as best we can tell, Roy feels aggrieved over the chancellor’s decision to offset the $50 per month benefit Ryan receives from the Department of Veterans Affairs from Roy’s monthly child support obligation. However, at no point does Roy claim that the amount of his child support obligation is improper. To fully understand the complexity of Roy’s argument under this issue, it is necessary to view it in its entirety. Roy states:
Therefore, it was established that [Cassandra] the said mother of the minor child was receiving $136 per month for the minor child from [Roy’s] Social Security Disability Benefits which has been increased to $142 per month. Therefore, the Judge did not establish in his judgment Decree date 28th day of November, A.D.2005 that the said minor *103 child mother ... had filed with the Veteran Administration under Federal Child Support Act 5 C.F.R. 581.103(c)(4)(iv) (1985) for a apportioning disability benefits for minor child. Veteran Administration granted that apportioning at the rate of $50.00 per month to the said mother. Respondent appealthe [sic] amount to the Veteran Administration for an increase. A hearing was schedulded [sic] for January 24, 2006 at 10:30 a.m. in North Little Rock, Arkansas. [Cassandra] did not show up for the hearing therefore the appeal was dropped and no increase was given to [Cassandra]. Therefore, the Judge order in the judgment Decree for [Roy] to pay ($266.00) [sic] per month to said mother of the minor child out of the Petitioner Disability check for child support. Therefore, Court Order child support order by the court violates [Roy’s] right under 5. C.F.R. 581.103(c)(4)(iv) stated that if a veterans is receiving 100% disability and no portion of retirement is not subjected to garnishment to pay child support or alimony.
In an entirely different section of his brief titled “Statement of Oral Argument,” Roy briefly mentions Veterans Administration v. Kee, 706 S.W.2d 101 (Tex.1986). According to Roy, the chancellor failed to apply Kee for the proposition that “a 100% disabled veteran benefits were not subjected to garnishment for paying court order child support and alimony.”
¶ 9. Roy is misplaced in his understanding of the chancellor’s order and in his interpretation of Kee. In Kee, a Texas trial court found an ex-husband delinquent in his child support and alimony obligations. The trial court ordered garnishment of the ex-husband’s Veterans Administration disability benefits to cure the delinquency. The Texas Court of Appeals affirmed. However, the Texas Supreme Court reversed.
¶ 10. According to Kee, federal law determines whether Veterans Administration disability benefits are subject to garnishment.[3] The Kee court applied two sections of the United States Code and concluded that a veteran’s disability benefits may be subject to garnishment if that veteran waives a portion of his retirement benefits to receive a larger compensation in disability benefits. Kee, 706 S.W.2d at 103. The ex-husband in Kee had waived all of his military retirement pay. Kee also noted that, pursuant to 5 C.F.R. § 581.103(c)(4)(iv), a veteran who waived all of his retirement benefits to receive greater disability benefits may not have his disability benefits garnished to pay child support or alimony.[4] Id. at 102.
¶ 11. The Kee court concluded that Congress intended to provide for the payment of child support but also intended to ensure that disabled veterans would securely have access to the benefits “necessary to take care of their essential needs.” Id. at 103. Accordingly, Kee held that “[i]n light of the legislative and regulatory scheme ... disability benefits received by a veteran in return for his having waived all his retirement benefits are not subject to garnishment for the payment of child support and alimony.” Id.
¶ 12. There are multiple reasons why the Texas Supreme Court’s decision in Kee *104 does not apply to the present scenario. Primarily, there is no indication among the record that Roy’s benefits are being garnished. There is no order for garnishment, and nothing in either of the chancellor’s two orders references garnishment. A letter to Roy from Carol J. Wintrode, Veterans Service Center Manager for the Department of Veterans Affairs, appears in the record. That letter, dated May 20, 2005, informed Roy that Cassandra receives monthly payments for Ryan in the amount of $50 per month and that those payments were “taken from [Roy’s] monthly disability compensation.” The letter also described the monthly $50 benefit as “Dependent Child’s Apportionment of Service Connected Disability Compensation.” Nothing in Ms. Wintrode’s letter references a garnishment order.
¶ 13. Additionally, Kee held that Veterans Administration disability benefits may not be garnished if that veteran waived a portion or all of his retirement benefits in order to receive greater disability benefits. Notwithstanding that there is no order for garnishment, there is no indication in the record that Roy retired from the military or that Roy waived a portion or all of his retirement benefits to receive greater disability benefits. It is possible that Roy retired from the military, but we cannot assume that to be the case without some proof in the record presently before us. There is no mention of Roy having retired from the military, much less that he waived any or all of his retirement benefits.
¶ 14. Because the authority cited by Roy has no bearing, factually or legally, upon the present facts, nothing under this argument amounts to an abuse of the chancellor’s discretion. As such, we affirm.
II. WHETHER THE CHANCELLOR ERRED WHEN HE ORDERED EDMOND TO PAY HALF OF ANY OF RYAN’S MEDICAL BILLS THAT MEDICAID WILL NOT COVER.
¶ 15. In this issue, Roy complains of the portion of the chancellor’s order that directs Roy and Cassandra to each pay one-half of Ryan’s medical expenses not covered by Medicaid. According to the “Summary of Oral Argument” portion of Roy’s brief, “[t]he Child Support Act Law says that when a parent of a minor child can provide insurance for a minor child to help cover all medical bills it must be done.” In another portion of Roy’s brief, he argues that the chancellor erred by declining to order that CHAMPVA insurance cover Roy’s half of any of Ryan’s medical bills not covered by Medicaid.
¶ 16. While it certainly seems reasonable to allow any secondary coverage on Ryan to compensate any medical bills not covered by Medicaid, without some demonstration in the record that Ryan is even entitled to such coverage, we cannot find that the chancellor erred when he declined to order such coverage. We cannot assume facts that are not present in the record. Accordingly, we cannot find that the chancellor abused his discretion. As such, we find this issue lacking in merit.
¶ 17. THE JUDGMENT OF THE LE-FLORE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.

. Roy signed Ryan’s birth certificate and indicated that he was Ryan's father.

. Roy has consistently acted pro se throughout the proceedings.

. Kee references the “Veterans Administration.” The benefits at issue derive from the "Department of Veterans Affairs.” We take judicial notice that, although the names are different, for our present purposes, the names are interchangeable.

. 5 C.F.R. § 581.103(c)(4)(iv) has since been rewritten and modified as 5 C.F.R. § 581.103(c)(7).